UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**CHARLES OUELLETTE,**              )
                                    )     CIVIL ACTION
          **Plaintiff,**            )
                                    )     NO. 18-40046-TSH
          v.                        )
                                    )
**TRUE PENNY PEOPLE, LLC,**         )
                                    )
          **Defendant.**            )
_____ )

## ORDER AND MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Docket No. 15).

**November 29, 2018**

**HILLMAN, D.J.**

Charles Ouellette ("Plaintiff") brought this claim for breach of contract and tortious interference with an advantageous business relationship. Defendant moves to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons below, Defendant's motion (Docket No. 15) is ***denied***.

## Background

We derive our summary of the factual background from Plaintiff's evidentiary proffers and from Defendant's undisputed proffers. *Copia Communications, LLC v. Amresorts, L.P.*, 812 F.3d 1, 2 (1st Cir. 2016).

On or about August 9, 2017, Plaintiff spoke on the phone with Raj Dubey, President of True Penny about a potential job for True Penny's "Maine project." On or about August 14, 2017, they spoke again, and Mr. Dubey extended Plaintiff a job offer, which Plaintiff immediately accepted. Mr. Dubey then requested that Plaintiff send copies of his passport and social security

card to initiate the hiring process. Plaintiff emailed copies of the documents and, in that email, memorialized Mr. Dubey's offer.

After Plaintiff accepted Mr. Dubey's offer, he notified his employer that he would be resigning from his position to take the job with True Penny. Thereafter, however, the relationship soured, and Plaintiff never worked for True Penny. The reasons that the relationship deteriorated are irrelevant to the jurisdictional question presented.

At all times, Plaintiff was a citizen of Massachusetts and all his communication with True Penny occurred from the Commonwealth. According to Plaintiff, both parties had the expectation that at least some of his work for the "Maine project" would be done from his home in Massachusetts.

True Penny is a Florida corporation. True Penny asserts that it has never performed any work in Massachusetts, serviced any Massachusetts-based clients, and has not registered to do business in the Commonwealth.

## **Standard of Review**

When considering a Rule 12(b)(2) motion without an evidentiary hearing, a district court uses the prima facie standard to evaluate whether it has personal jurisdiction over the defendant. Under this standard, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008). The plaintiff bears the burden of showing that the court may exercise personal jurisdiction over the defendant and "must put forward evidence of specific facts to demonstrate that jurisdiction exists." *A Corp. v. All Am. Plumbing*, 812 F.3d 54, 58 (1st Cir. 2016) (internal quotation marks and citation omitted). Further, courts "take the plaintiff's evidentiary proffers as true and construe them in the light most favorable to the plaintiff's claim."

*C.W. Downer & Co. v. Bioriginal Food & Sci. Cor.*, 771 F.3d 59, 65 (1st Cir. 2014). Finally, courts also "consider uncontradicted facts proffered by the defendant." *Id.*

### Discussion

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). Thus, in order to establish personal jurisdiction over Defendant, Plaintiff must satisfy the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290, 100 S.Ct. 559 (1980).

The Massachusetts long-arm statute enumerates eight specific grounds on which a nonresident defendant may be subjected to personal jurisdiction by a court of the Commonwealth. *See* Mass. Gen. Laws ch. 223A, § 3. Massachusetts courts have held that the long-arm statute "asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statue has been established." *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 6, 378 N.E.2d 76 (1979). Therefore, this court is "required to decline to exercise jurisdiction if the plaintiff [is] unable to satisfy at least one of the statutory prerequisites." *Id.*

Additionally, "courts should consider the long-arm statute first, before approaching the constitutional question." *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 330, 85 N.E.3d 50 (2017). Determining first whether the long-arm statute's requirements are met is consistent with the duty to avoid "decid[ing] questions of a constitutional nature unless absolutely necessary to a decision of the case." *Burton v. United States*, 196 U.S. 283, 295, 25 S.Ct. 243 (1905).

*1. Massachusetts Long-Arm Statute*

The Massachusetts Long Arm Statue provides, in relevant part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3. Thus, Defendant must have transacted business in the Commonwealth and Plaintiffs' claims must have arisen from that transaction of business.

The requirement that a defendant transact business in the Commonwealth "has been construed broadly." *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767, 625 N.E.2d 549 (1994) (citations omitted). "Although an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement." *Id.* Importantly, although the successful solicitation of business is a sufficient condition for exercising jurisdiction, it is not a necessary one. *See Cossart v. United Excel Corp.*, 804 F.3d 13, 19 (1st Cir. 2015) ("*Tatro* does not hold that the 'transacting business' language of Section 3(a) requires that a defendant have *successfully* solicited business in Massachusetts. And other Massachusetts precedent shows that there is no such requirement.").

In *Haddad v. Taylor*, 32 Mass.App.Ct. 332 (1992), for instance, the Massachusetts Appeals Court held that a non-resident defendant had transacted business within the meaning of Section 3(a) by negotiating, via telephone and the mail, a contract for the sale of land in Massachusetts while outside the Commonwealth, despite the fact he did not own the land (but instead acted through power of attorney) and no contract was ever consummated. Here, even assuming *arguendo* that Defendant is correct that no contract was formed, Massachusetts courts have not found a consummated contract necessary to exercise long-arm jurisdiction under Section 3(a). Further, much like the defendant in *Haddad*, Defendant negotiated the employment contract via

4

phone and email while Plaintiff was in the Commonwealth.  Finally, as the land for sale in *Haddad* was in Massachusetts, Defendant contemplated that at least some of Plaintiff's services would be rendered from his home in the Commonwealth.  Thus, I find that Defendant transacted business in the Commonwealth within the meaning of the long-arm statute.

In addition to Defendant transacting business in the forum, Plaintiff's claims have arisen from Defendant's transaction of business in the Commonwealth.  In accordance with the broad construction of the long-arm statute, the court in *Tatro* interpreted the "arising from" requirement to require only "but for" causation. 416 Mass. at 770, 625 N.E.2d 549 ("terms such as 'arising from' . . . should be interpreted as creating a 'but for' test. This test permits jurisdiction in a case [where the transaction of business is] the first step in a train of events that results in the [harm].").  Here, Defendant's conduct easily satisfies the "but for" causation standard.  Plaintiff's claims arise directly from Defendant's transaction of business in the Commonwealth.  Indeed, Plaintiff's negotiations and consummation of an employment contract with Defendant were the first step in the train of events resulting to his alleged harms.

Because Defendant has transacted business in the Commonwealth within the meaning of the Massachusetts long-arm statute and because Plaintiff's claims arise from that transaction under the "but for" standard, I find that asserting jurisdiction is proper under state law.

### 2. *Constitutional Due Process*

Because Plaintiff has satisfied his burden of demonstrating that exercising jurisdiction does not violate the Massachusetts long-arm statute, he must now demonstrate that it does not offend the Due Process Clause.  "The exercise of personal jurisdiction may, consistent with due process, be either specific or case-linked or general or all-purpose." *Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (2015) (quotation marks and citation omitted).

Here, Plaintiff has not argued that Defendant is subject to general jurisdiction in Massachusetts. Therefore, I proceed directly to the specific jurisdiction analysis.

### a. Specific Jurisdiction

The inquiry into whether there has been the requisite "minimum contacts" necessary to assert specific personal jurisdiction is inherently imprecise: "the criteria which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative." *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154 (1945). To assist in this necessarily individualized assessment, the First Circuit has held that a plaintiff seeking to establish specific jurisdiction must demonstrate that three conditions are satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

*Phillips*, 530 F.3d at 27 (quoting *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007)). In addition, the Court must "analyze the contract and tort claims discretely. Questions of specific jurisdiction are always tied to the particular claims asserted." *Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999). Thus, in contract cases, the court must determine "whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." *Id.* In tort cases, the court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." *Id.*

### i. Relatedness

The relatedness inquiry "serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum." *Sawtelle*, 70

F.3d at 1389. The court "must consider the contacts between the defendants and the forum state viewed through the prism of plaintiff['s] . . . claim." *Cossart*, 804 F.3d at 20 (alterations in original) (citation omitted). "The evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." *Harlow v. Children's Hosp.*, 432 F.3d 50, 60-61 (1st Cir. 2005). Thus, "[t]here must be more than just an attenuated connection between the contacts and the claim." *Phillips*, 530 F.3d at 27; *see also Walden v. Fiore*, 571 U.S. 277, 290, 134 S.Ct. 1115 ("The proper question is not where the plaintiff experienced the particular injury or effect but whether the defendant's conduct connects him to the forum state."). In a contract dispute, the First Circuit has noted that when assessing relatedness courts must "pay particularly close attention to 'the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Cossart*, 804 F.3d at 20 (quoting *C.W. Downer & Co.*, 771 F.3d at 66).

Defendant contends that Plaintiff's claims are not sufficiently related to the forum because, had Plaintiff become employed, he would have serviced a project in Maine. In *Cossart*, the plaintiff's claim similarly arose from a breach of an employment contract while he was servicing a California client. *Id.* The court found that relatedness was satisfied, however, because the claim arose from a "contract defendants procured with a Massachusetts resident to be performed by the resident primarily from Massachusetts." *Id.* Further, the plaintiff completed a significant portion of the work that led to his claim from the Commonwealth. *Id.* Here, like in *Cossart*, Defendant negotiated with a Massachusetts resident while he was at home in the forum and ultimately contracted with him. While it is true that Plaintiff would have serviced a client in Maine, the relevant inquiry is where Plaintiff would have performed that service. Like the plaintiff in *Cossart*, the contract here anticipated Plaintiff performing work for Defendant from his home in the

7

Commonwealth. *See* Ouellette Aff. ¶¶ 4-6. Indeed, Defendant acknowledges that it "utilizes employees and independent contractors who work both remotely from their homes and on-site at the client's location, depending on the project." Wooten Aff. ¶ 10. Thus, I find that Plaintiff's claim is sufficiently related to Defendant's actions in the forum to assert jurisdiction over Defendant for Plaintiff's contract claim.

I must also analyze relatedness as it pertains to Plaintiff's tort claims. *See Phillips Exeter Academy*, 196 F.3d at 289. Plaintiff contents that Defendant's contractual offer caused him to lose gainful employment and therefore constituted tortious interference with an advantageous business relationship. Plaintiff's tort claims are based on, and causally linked to, the same underlying conduct by Defendant. Accordingly, I also find a sufficient nexus between Plaintiff's tort claims and Defendant's contacts with the forum to satisfy the relatedness requirement.

*ii. Purposeful Availment*

"In determining whether the purposeful availment condition is satisfied, our key focal points are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." *Copia*, 812 F.3d at 5 (quotation marks and citation omitted). Voluntariness requires that the defendant's contacts with the forum state are "not based on the unilateral actions of another party or a third person." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 716 (1st Cir. 1996) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985)). Foreseeability requires that "the defendant's contacts with the forum state be such that he should reasonably anticipate being haled into court there." *Id.* (citing *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559). When inquiring whether Defendant has purposefully availed itself of the forum, however, the only relevant contacts are those that gave rise to the cause of action. *See Copia*, 812 F.3d at 5.

8

Defendant relies on *Phillips* to argue that it has not purposefully availed itself of the Commonwealth. In that case, the defendant mailed a contract to Massachusetts for signature and followed up with three emails to the plaintiff while he was in the forum. *Phillips*, 530 F.3d at 29. The contract, however, was for employment in Illinois and the plaintiff interviewed for the job there. *Id.* Here, on the other hand, Plaintiff neither traveled to Florida to negotiate nor was performance contemplated in Florida. Instead, Plaintiff negotiated from his home in the forum and the contract envisioned at least partial performance in the Commonwealth. Thus, Defendant's reliance on *Phillips* is misplaced.

In *Cossart*, the First Circuit found that purposeful availment "hing[ed] on three factors: the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of extensive in-forum services." *Copia*, 812 F.3d at 6 (citing *Cossart*, 804 F.3d at 21). In *Copia*, on the other hand, the First Circuit found exercising specific jurisdiction improper where none of the factors were present. *Id.* Importantly, neither the *Cossart* nor *Copia* courts suggested that the presence of all three factors were necessary to find purposeful availment. Instead, the caselaw suggests that if a defendant satisfies all three factors, it has purposefully availed itself of the forum, and if a defendant has not satisfied any of the factors, it has not purposefully availed itself. Here, two of the facts are present. Defendant solicited Plaintiff's services while he was at home in the Commonwealth. Further, the contract envisioned the performance of in-forum services. While Plaintiff has not actually performed extensive in-forum services like the plaintiff in *Cossart*, it would be a strange result to allow Defendant to evade suit in the Commonwealth simply by breaching a contract that envisioned performance in the forum before Plaintiff had an opportunity to perform. Indeed, Defendant's voluntary actions in the Commonwealth—entering into an

employment contract with a Massachusetts resident that envisioned performance in the forum—certainly rendered suit in the forum foreseeable. Therefore, I find that Defendant has purposefully availed itself of the forum with respect to Plaintiff's contract claim.

Turning to Plaintiff's tort claims, as mentioned above, these claims are based on the same underlying conduct by Defendant. Because Defendant's conduct in the Commonwealth was both voluntary and made it foreseeable that it would be haled into a Massachusetts court, Defendant has also purposefully availed itself of the forum with respect to Plaintiff's tort claims.

### iii. Reasonableness

Finally, this court must consider the reasonableness of exercising jurisdiction over New Prime. Accordingly, asserting jurisdiction must comport with traditional notions of "fair play and substantial justice." *International Shoe*, 326 U.S. at 320, 66 S.Ct. 154. "Out of this requirement, courts have developed a series of factors that bear on the fairness of subjecting a nonresident to a foreign tribunal." *Nowak*, 94 F.3d at 717. These "gestalt factors" are:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*C.W. Downer*, 771 F.3d at 69 (alterations in original) (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d, 201, 209 (1st Cir. 1994)). The gestalt factors help the court do substantial justice, especially where the relatedness and purposeful availment inquiries are close. *Nowak*, 94 F.3d at 717. "In such cases, the gestalt factors may tip the constitutional balance." *Id.* Consequently, our assessment of these factors operates on a sliding scale: "[T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster*, 26 F.3d at 210. "The reverse is

equally true: a strong showing of reasonableness may serve to fortify a more marginal showing of relatedness and purposefulness." *Nowak*, 94 F.3d at 717.

### (1) Burden of Appearance

While it is always a burden for a foreign defendant to appear in the forum state, for this factor to have any import, the defendant must show that the "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994).

Defendant argues that it is a small company and that it would "incur expense educating local counsel on [Defendant's] business and practices, and on travel time to and from its principal place of business in Florida." (Docket No. 15 at 8). This burden, however, is like that of many foreign defendants haled into a court in the Commonwealth. Defendant has done nothing to demonstrate that its burden is special or unusual. Thus, this factor tips in favor of exercising jurisdiction.

### (2) Interest of the Forum

"Massachusetts has a significant interest in ensuring that contracts entered into by Massachusetts residents are given full effect." *Champion Exposition Servs., Inc. v. Hi-Tech Elec., LLC*, 273 F. Supp. 2d 172, 179 (D. Mass. 2003). Further, a forum state has a significant interest in asserting jurisdiction over a defendant who causes tortious injury within its borders. *Ticketmaster*, 26 F.3d at 211.

Here, both propositions provide the Commonwealth with an interest in this case. The forum has an interest in giving Plaintiff's contract full effect. In addition, Massachusetts has an interest in asserting jurisdiction over Defendant for tortuously interfering with Plaintiff's

advantageous business relationship and consequently causing injury to Plaintiff inside the Commonwealth. Thus, this factor also tilts in favor of asserting jurisdiction.

*(3) Remaining Factors*

Defendant does not challenge this Court's jurisdiction based on the remaining gestalt factors. "The remaining factors relevant to the inquiry also do not indicate a problem with Massachusetts serving as the forum state." *Cossart*, 804 F.3d at 22 (finding the gestalt factors permitted jurisdiction after analyzing the first two factors). Therefore, I find that the gestalt factors do not preclude exercising specific jurisdiction over Defendant.

## Conclusion

For the reasons stated above, I find that Plaintiff has proffered sufficient evidence to support a finding that the assertion of jurisdiction over Defendant does not violate the Massachusetts long-arm statute or offend constitutional due process. Therefore, Defendant's motion to dismiss for lack of personal jurisdiction (Docket No. 15) is ***denied***.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**